IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DARICK ALBERT JOHNSON, #234716, | ) Civil Action No. 3:10-70-HFF-JRM |
| Plaintiff, | ) |
| vs. | ) |
| | ) REPORT AND RECOMMENDATION |
| MR. A. J. PADULA, SCDC;<br>MR. J. J. BROOKS;<br>MS. Y. MCDONALD; AND<br>ANNA MOAK, IN THEIR INDIVIDUAL AND<br>OFFICIAL CAPACITIES, | ) |
| Defendants. | ) |

Plaintiff, Darick Albert Johnson, filed this action on January 13, 2010.[1] At the time of the alleged incidents, he was an inmate at the Lee Correctional Institution ("LCI") of the South Carolina Department of Corrections ("SCDC"). Plaintiff was released from prison in approximately April 2010. See Docs. 19 and 30 (Plaintiff's Change of Address Notifications). Defendants filed a motion for summary judgment on June 10, 2010. Because Plaintiff is proceeding pro se, he was advised on June 11, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on August 2, 2010.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because these are dispositive motions, the report and recommendation is entered for review by the court.

## MOTION TO STRIKE

On April 13, 2010, Plaintiff filed a motion to strike. He appears to request that Defendants' defense of qualified immunity be stricken. Defendants did not file a response.

It is recommended that Plaintiff's motion to strike be denied. Motions to strike "are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." <u>Waste Mgmt. Holdings v. Gilmore</u>, 252 F.3d 316, 347 (4th Cir., 2001) (internal citations and quotations omitted). "A motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted. Accordingly, a motion to strike matter from an answer will not be granted, unless the moving party demonstrates that the challenged material is so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense such that its presence in the pleading throughout the proceeding will be prejudicial to the moving party." <u>McIntyre-Handy v. APAC Customer Servs.</u>, 2006 WL 721383 (E.D.Va. Mar. 20, 2006) (internal citations and quotations omitted). Here, Plaintiff has not made such a showing.

To the extent that Plaintiff's motion is made pursuant to Fed. R. Civ. P. 12(f), it is recommended that the motion be denied because it is untimely and because Plaintiff has not shown that Defendants' defenses are insufficient, redundant, immaterial, impertinent, or scandalous. Rule 12(f) provides:

> (f) Motion to Strike. The court may strike from a pleading **an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter**. The court may act:
>     (1) on its own; or
>     (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, **within 21 days after being served with the pleading**.

Fed. R. Civ. P. 12(f)(emphasis added). Defendants filed their answer on March 8, 2010, and Plaintiff did not file his motion until April 13, 2010.

**MOTION FOR SUMMARY JUDGMENT**

Plaintiff alleges that Defendants violated his Eighth Amendment rights because they were deliberately indifferent to his serious medical needs. He also alleges a claim for negligence. Defendants contend that they are entitled to summary judgment because: (1) Plaintiff failed to exhaust his administrative remedies; (2) Defendants are entitled to qualified immunity from any monetary relief claims brought against them in their individual capacities; (3) Plaintiff fails to show deliberate indifference to a serious medical need; (4) the doctrine of respondeat superior is not applicable in an action brought pursuant to 42 U.S.C. § 1983 ("§ 1983"); (5) Defendants are entitled to Eleventh Amendment immunity; (6) Plaintiff has not made a viable claim that Defendants Padula and Brooks were constitutionally deficient in their supervisory duties; (7) any perceived state claims should be dismissed under the discretion of the court; (8) any request for injunctive relief should be denied;[2] and (9) Plaintiff's claims are factually and legally frivolous and should be dismissed and count as a strike pursuant to the Prison Litigation Reform Act.

1. Administrative Remedies

Defendants contend that this action should be dismissed because Plaintiff failed to exhaust his administrative remedies. Defendants submitted affidavits from Mary Coleman, who is in charge of inmate grievances for SCDC, and Anna Moak, the Senior Regional Clinical Coordinator for SCDC. Coleman and Moak provide that Plaintiff filed a grievance concerning the alleged

---

[2]Any claims for injunctive relief are moot, as Plaintiff is no longer imprisoned at SCDC. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.1991)("[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief.").

incidents, which was denied at Step 1 and 2, but that Plaintiff did not appeal the denial to the Administrative Law Court ("ALC") within thirty days of the Step 2 denial of his grievance. See Moak Aff. and Coleman Aff. and Attachments.

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the Prison Litigation Reform Act's ("PLRA"), 42 U.S.C. § 1997, exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532. The Fourth Circuit, in Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674 (4th Cir. 2005), held that an inmate's failure to allege exhaustion does not constitute failure to state a claim and the failure to exhaust is an affirmative defense that should be pleaded or otherwise properly raised by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies." Id. at 683.

Defendants contend that Plaintiff failed to exhaust his administrative remedies as to his claims because he did not appeal the denial of his grievance to the South Carolina ALC. The fact that the South Carolina Legislature made a court available to prisoners who wanted to appeal a final decision by a jail facility denying a grievance, however, does not alter the federal PLRA by extending its administrative exhaustion requirements to include exhaustion in all state judicial forums. In § 1983

4

matters, Congress only intended that "administrative remedies" be satisfied. See e.g., Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)(exhaustion under § 1997e(a) is administrative only; a prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court), cert. denied, 437 U.S. 949 (2002); Brown v. Evans Corr. Inst. Med. Staff, 2007 WL 1290359, at *4 (D.S.C. April 30, 2007).

    2.    Medical Claims

Plaintiff states that his eyes are sensitive to light and this condition causes migraine headaches, vomiting, and loss of appetite. He appears to allege that Defendants were deliberately indifferent to his serious medical needs because he was not given sunglasses and did not receive treatment from an eye specialist. Defendants contend that Plaintiff fails to show that they were deliberately indifferent to any of his serious medical needs. They provide that Plaintiff's medical records show that he was told by the LCI medical department that he could not be issued the sunglasses without a medical reason and that the records indicate no instances where he reported to sick call with complaints of migraine headaches, vomiting, and/or loss of appetite.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or

> intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An

> act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. Defendants submitted copies of Plaintiff's SCDC medical records which show that Plaintiff was evaluated at the LCI Medical Department on November 17, 2008, after he stated that he needed tinted glasses because of sensitivity to light and resulting headaches. Plaintiff was evaluated at sick call and found to have 20/20 vision. He was advised by the LCI Medical Department that he could not be issued sunglasses without a medical reason. The records indicate that Plaintiff was examined at sick call on numerous occasions after that time for various reasons, but there is no indication that Plaintiff complained of migraine headaches, vomiting, and/or loss of appetite. On December 17, 2009, Plaintiff complained to medical about sensitivity to light that caused headaches. The nurse deferred Plaintiff's complaints to a physician to determine if an ophthalmology consultation was warranted. On February 4, 2010, it was noted in the medical record that Plaintiff was scheduled for an optometry clinic appointment on May 4, 2010. As noted above, Plaintiff was released from SCDC custody in approximately April 2010 (prior to his optometry clinic appointment). See Yvonne McDonald Affidavit and Attachments (Plaintiff's SCDC Medical

7

Records). Additionally, Plaintiff has presented no evidence that Defendants Padula, Brooks, and Moak (non-medical personnel) were involved in the direct provision of health care services to Plaintiff or actually knew of and disregarded a substantial risk of serious injury to Plaintiff resulting from the medical staff's treatment of Plaintiff. The Fourth Circuit has held that corrections administrators, such as Defendants Padula and Brooks, are entitled to rely on the expertise of health care providers. See Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990).

Plaintiff appears to disagree with the type and amount of medical treatment he received. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff believes that he should have received sunglasses and different medical treatment, he fails to show that Defendants' actions or inactions rose to the level of a constitutional violation.

3. Supervisory Liability

Defendants Padula and Brooks contend that Plaintiff makes no allegations of personal involvement with regard to medical treatment on their part and that they cannot be held liable under § 1983 on a theory of respondeat superior. These Defendants also argue that Plaintiff fails to show that they were constitutionally deficient in their supervisory duties.

The doctrine of respondeat superior generally is inapplicable to § 1983 suits. Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994). Plaintiff has not alleged that Defendants Padula and/or Brooks had any personal involvement with his medical care. Further, he has not shown any basis for supervisory liability.

4. Immunity

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity

> [cites omitted] or unless Congress has exercised its undoubted power under
> § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Thus, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if

there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

5. State Law Claims

Plaintiff appears to assert a claim under South Carolina law for negligence. Defendants contend that any state law claims should be dismissed. As Plaintiff fails to show that Defendants violated his rights under federal law (as discussed above), only potential state law claims remain. Thus it is also recommended that, pursuant to 28 U.S.C. § 1367(c)(3), any remaining state law claims be dismissed without prejudice.

**CONCLUSION**

Based on review of the record, it is recommended that Plaintiff's motion to strike (Doc. 18) be **denied**, and that Defendants' motion for summary judgment (Doc. 23) be **granted**.

_____
Joseph R. McCrorey
United States Magistrate Judge

October 5, 2010
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).